# Exhibit 1

ELECTRONICALLY FILED
8/3/2025 2:42 PM
38-CV-2025-900290.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

**IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA**

| | | |
|---|---|---|
| Houston County Health Care Authority<br>d/b/a Southeast Health, | ) ) ) | |
| Plaintiff, | ) ) | **CIVIL ACTION NO. _____** |
| v. | ) ) | **JURY DEMAND** |
| UnitedHealthCare Insurance Company, | ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Houston County Health Care Authority d/b/a Southeast Health ("Plaintiff," "Houston County Health Care Authority," or "Southeast Health") hereby files this Complaint against UnitedHealthCare Insurance Company ("United" or "Defendant"), showing the Court as follows:

## PARTIES

1.     The Houston County Health Care Authority is a public not-for-profit corporation organized and operating under Ala. Code § 22-21-310, *et seq.*, with its principal place of business in Dothan, Alabama. The Houston County Health Care Authority does business under the name Southeast Health. The Houston County Health Care Authority is authorized to bring this suit by Ala. Code § 22-21-318(a)(2).

2.     UnitedHealthCare Insurance Company is a foreign insurance company registered to do business in the State of Alabama and doing business in the State of Alabama.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this case because, among other things, Southeast Health's principal place of business is in Alabama, United does business in Alabama, and a substantial part of the events and omissions described in this Complaint occurred in Alabama.

4.      This Court may exercise jurisdiction over this case in accordance with Ala. Code § 6-6-222 and Ala. Code § 12-11-30(1).

5.      Venue is proper in this Court pursuant to Ala. Code § 6-3-7(a) because Southeast Health's principal place of business is Houston County, Alabama and a substantial part of the events and omissions giving rise to this Complaint occurred in Houston County, Alabama.

## FACTS

### The 340B Program

6.      The present dispute centers solely on Southeast Health's reimbursement for drugs purchased through the federal 340B Drug Pricing Program (the "340B Program").

7.      Congress created the 340B Program to enable hospitals treating a high volume of low-income patients to purchase certain drugs from manufacturers at discounted prices.

8.      340B-qualified hospitals purchase drugs from drug manufacturers and then provide these drugs to patients during the course of treatment. Qualifying hospitals are known as "340B hospitals."

9.      Southeast Health is a 340B hospital.

### Medicare Advantage

10.     After the provision of hospital services to patients, hospitals may submit and receive reimbursement from various payors, such as private insurance or government-sponsored insurance.

11.     One type of government-sponsored insurance is Medicare.

2

12.    The Centers for Medicare & Medicaid Services ("CMS") is the federal agency that administers the Medicare program. CMS provides Medicare coverage to eligible beneficiaries through two primary mechanisms: original Medicare and Medicare Advantage.

13.    The Medicare Advantage program provides Medicare-eligible individuals with an alternative to original Medicare, by way of the private sector. Under Medicare Advantage, CMS contracts with private health plans (*i.e.*, insurance companies) to manage and pay for the health care of Medicare beneficiaries. In turn, Medicare Advantage plans reimburse healthcare providers that provide medical services to their enrollees at independently-negotiated rates. These Medicare Advantage plans are also known as "Medicare Advantage Organizations."

***Southeast Health and United's Contract***

14.    Southeast Health is a hospital based in Dothan, Alabama that provides comprehensive patient services in Southeast Alabama. As a nonprofit healthcare provider, Southeast Health provides services to underserved and low-income populations.

15.    United is a for-profit health insurer that operates various Medicare Advantage plans through contracts with the federal government.

16.    Until September 1, 2018, United had a written contract with Southeast Health whereby Southeast Health provided medical services to United's Medicare Advantage members in return for reimbursement. The rate paid to Southeast Health for the administration of 340B drugs under this contract was equivalent to 100% of what Southeast Health would be paid for 340B drugs under original Medicare. This written contract terminated effective September 1, 2018.

17.    After the termination of the written contract, the parties no longer expressly contracted together for Medicare Advantage. On the hospital side, this is sometimes referred to as

3

being "out-of-network", "non-contracting", or "non-par" or non-participating provider with an insurance plan.

18.    Despite being out-of-network, United explicitly promised to Southeast Health in writing that, at least until December 31, 2018, United would continue to process all claims submitted by Southeast Health for healthcare services administered to United's Medicare Advantage members (including the administration of 340B drugs) in the same manner that United did prior to September 1, 2018 – i.e., by paying Southeast Health 100% of what it would be paid for 340B drugs under original Medicare. *See* **Exhibit A**.

19.    This promise from United to Southeast Health simply tracked United's existing legal requirements from CMS as a Medicare Advantage plan, which is that Medicare Advantage Organizations "are generally required to reimburse non-contracting providers at least the original Medicare rate for Medicare covered services."[1]

20.    To date, United and Southeast Health are still out-of-network for Medicare Advantage and, to date, as required by CMS, United has continued to pay Southeast Health at least the original Medicare rate for Medicare covered services provided by Southeast Health to United's Medicare Advantage beneficiaries.

21.    Specifically, from September 1, 2018, through December 2, 2022, Southeast Health provided medical care, including 340B drugs, to United's Medicare Advantage members enrolled in United's various Medicare Advantage plans. During this time period, Southeast Health submitted claims to United for the medical services Southeast Health provided to United's Medicare Advantage members, which were then paid by United at a rate equal to original

---

[1] Centers for Medicare and Medicaid Services, MA Payment Guide for Out of Network Payments, last updated April 15, 2025. Available for download at https://www.cms.gov/medicare/enrollment-renewal/health-plans/dispute-resolution. *See also* 42 U.S.C.A. § 1395w-22(a)(2)(A).

Medicare. By continuing this practice and through their course of dealing, Southeast Health and United created a valid and enforceable implied contract.

22.     The implied contract's terms bind United to pay Southeast Health for 340B drugs provided by Southeast Health to United's Medicare Advantage members at a rate equivalent to 100% of what Southeast Health would be paid for 340B drugs under original Medicare.

### *340B Drug Reimbursement Rates*

23.     The Medicare statute establishes a default reimbursement rate for outpatient drugs furnished by hospitals, which is the Average Sales Price of the drugs plus six percent ("ASP + 6%" or the "Default Rate"). 42 U.S.C. § 1395l(t)(14)(A)(iii).

24.     The Default Rate does not differentiate between drugs purchased through the 340B program and non-340B drugs, nor by any class or group of hospitals.

25.     Each year CMS sets the Medicare reimbursement rates for outpatient services (including drugs) through its Outpatient Prospective Payment System ("OPPS") Final Rule.

26.     Effective in the January 1, 2018 OPPS Final Rule, CMS implemented a new rule reducing the Medicare allowable amount for 340B drugs. 82 Fed. Reg. 52510. Under the 2018 OPPS Final Rule, the Medicare allowable amount for 340B drugs was no longer the Default Rate. Instead, the Medicare allowable amount for 340B drugs was reduced to a rate equal to ASP *minus* 22.5% (the "Unlawful Rate").

27.     CMS' 2018 OPPS Final Rule generated immediate outcry due to the massive negative reimbursement impact to 340B hospitals. Industry stakeholders initiated litigation against CMS based on the argument that CMS exceeded its statutory authority by reimbursing 340B hospitals at a different rate than non-340B hospitals without following the certain parameters within the Medicare statute.

5

28.    Despite this outcry and litigation, CMS continued to implement the Unlawful Rate for 340B hospitals in the 2019, 2020, 2021, and 2022 OPPS Final Rules.

29.    After years of litigation over CMS' Unlawful Rate, the United States Supreme Court ***unanimously*** found on June 15, 2022 that CMS failed to follow the process set forth in the Medicare statute for paying a class of providers a different rate for drugs, and as such, the Unlawful Rate that CMS paid to 340B hospitals since 2018 was "contrary to the [Medicare] statute and unlawful." *American Hosp. Ass'n v. Becerra*, 596 U.S. 724, 739 (2022).

30.    The United States Supreme Court remanded the case to the D.C. Circuit Court to determine the remedy for the Unlawful Rate, and the D.C. Circuit Court in turn remanded the case to the D.C. District Court ("D.C. Court"). *American Hosp. Ass'n v. Becerra*, No. 19-5048, 2022 WL 3061709, at *1 (D.C. Cir. Aug. 3, 2022).

31.    Upon remand, the D.C. Court first vacated CMS' 2022 OPPS Rule effective September 28, 2022, noting that "vacatur will immediately ***revert*** the 340B reimbursement rate to the default rate." *American Hosp. Ass'n v. Becerra*, No. 18-2084, 2022 WL 4534617, at *1 (D.D.C. Sept. 28, 2022) (emphasis added).

32.    Next, the D.C. Court assessed whether to vacate the Unlawful Rate for the time period spanning January 1, 2018 to September 28, 2022. Given Medicare's sheer size and the complexity of reprocessing more than four and half years of claims payments, the D.C. Court ruled that "rather than vacate those rules, it will remand without vacatur to give the agency the opportunity to remediate its underpayments." *Id.* at *1.

33.    While CMS was still crafting a remedy, CMS released a memorandum directed to all Medicare Advantage Organizations ("MAOs") regarding the Unlawful Rate. In this bulletin, CMS discussed the Supreme Court decision, Unlawful Rate, and explicitly noted that "[a]s a

reminder, MAOs must pay non-contract providers or facilities for services and items at least the amount they would have received under Original Medicare payment rules[.]"[2]

34.    At the D.C. Court's direction, CMS adopted a proposed lump sum remedy in November 2023 ("CMS Remedy Rule"). 88 Fed. Reg. 77150–94 (Nov. 8, 2023). CMS subsequently made one-time lump sum payments in January 2024 to impacted 340B hospitals equal to the difference between the Unlawful Rate and the Default Rate. *Id.* at 44083.

35.    In connection with the CMS Remedy Rule, CMS received a comment that "Many commenters expressed concern about [MAOs] realizing a ''windfall'' as a result of reducing outpatient payments without making corresponding repayments to hospitals . . . These commenters requested that CMS consider several courses of action to ensure MAOs fully comply with the remedy." In response, CMS stated it already resolved this issue for out-of-network providers. CMS reiterated its earlier memorandum to MAOs and noted that in this memorandum "[w]e clarified that for Medicare Advantage, MAOs must pay non-contract providers or facilities for services and items at least the amount they would have received under Original Medicare payment rules, in accordance with section 1852(a)(2) of the Act (42 U.S.C. 1395w–22)." *Id.* at 77184.

36.    In compliance with its Remedy Rule, which became effective on January 8, 2024, CMS paid Southeast Health a lump sum remedy payment in January 2024. As of this filing, CMS has fully remedied the Unlawful Rate for all 340B hospitals, including Southeast Health.

37.    Despite CMS' explicit guidance directing MAOs to pay out-of-network providers "at least the amount they would have received under Original Medicare" for the Unlawful Rate,

---

[2] Centers for Medicare and Medicaid Services, Memorandum issued on December 20, 2022, Hospital Outpatient Prospective Payment System Update on Payment Rates for Drugs Acquired through the 340B Program – Informational for MAOs. Available for download at https://www.cms.gov/newsroom/fact-sheets/hospital-outpatient-prospective-payment-system-opps-remedy-340b-acquired-drug-payment-policy.

United has not paid Southeast Health a lump sum remedy payment or any other type of remedial payment for the Unlawful Rate. On May 9, 2025, Southeast Health formally requested that United remit funds to Southeast Health to correct its improper payments from September 1, 2018 through December 2, 2022. This formal request is attached as **Exhibit B**.

38.    On June 6, 2025, United responded to Southeast Health's formal request, stating that "United will not make lump sum payments;" meaning and that United will retain the full benefits it received as part of its relationship with Southeast Health from September 1, 2018 to December 2, 2022, but refuse to pay Southeast Health the full value of the services it rendered during this period of time. United's June 6, 2025 response is attached as **Exhibit C**.

**COUNT I**
**BREACH OF IMPLIED CONTRACT**

39.    Southeast Health incorporates the preceding paragraphs as if fully set forth herein.

40.    United's continued actions beginning on September 1, 2018, including knowingly accepting the medical services performed by Southeast Health and reimbursing Southeast Health, created an implied contract that United would reimburse Southeast Health at a rate equivalent to what Southeast Health would have been paid under original Medicare.

41.    A meeting of the minds and mutual assent occurred as Southeast Health agreed and provided medical services to United's Medicare Advantage members in exchange for reimbursement of what Southeast Health would have been paid under original Medicare.

42.    Southeast Health has fully performed its obligation under this implied contract, and continues to do so.

43.    United's payments to Southeast Health during the relevant time period were calculated based on CMS's Unlawful Rate, which unlike original Medicare, United has refused to remediate, thereby breaching its contract with Southeast Health.

8

44.    As a result of United's failure to reimburse Plaintiff at a rate equivalent to at least what Southeast Health would have been paid under original Medicare for 340B drugs, Southeast Health did not receive full benefit of the bargain, and instead received reimbursement of a diminished value to that required by the implied contract. Southeast Health, therefore, was damaged, in an amount to be proven at trial, at least equal to the difference in the value between what Southeast Health was reimbursed and what it should have been reimbursed under the implied contract. Southeast Health is also entitled to prejudgment interest at the applicable rate, costs incurred in seeking to collect this debt, and any and all other relief to which the Court determines Southeast Health is entitled.

**COUNT II**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

45.    Southeast Health incorporates the preceding paragraphs as if fully set forth herein.

46.    When it provided medical services to United's Medicare Advantage members, Southeast Health expected that United would reimburse Southeast Health at least what Southeast Health would have been reimbursed for 340B drugs under original Medicare.

47.    Alabama implies a covenant of good faith and fair dealing in every contract. *Sellers v. Head*, 73 So. 2d 747, 751 (Ala. 1954) ("Where a contract fails to specify all the duties and obligations intended to be assumed, the law will imply an agreement to do those things that according to reason and justice the parties should do in order to carry out the purpose for which the contract was made.").

48.    By failing to correct its improper payments, reimburse Southeast Health at the correct and lawful rate, and "do those things that according to reason and justice [it] should do in order to carry out the purpose for which the [contract]" was made, United breached its duty to deal fairly and in good faith with Southeast Health. *Id.*

9

49.     As a result of United's breaches of the covenant of good faith and fair dealing, Southeast Health has been damaged in an amount to be proven at trial, at least equal to the difference in the value between what Southeast Health was reimbursed and what it should have been reimbursed under the implied contract. Southeast Health is also entitled to prejudgment interest at the applicable rate, costs incurred in seeking to collect this debt, and any and all other relief to which the Court determines Southeast Health is entitled.

## COUNT III
## QUANTUM MERUIT

50.     Southeast Health incorporates the preceding paragraphs as if fully set forth herein.

51.     Southeast Health provided valuable medical services to United's Medicare Advantage members at United's request and with United's knowledge of these services and Southeast Health's expectation that United would reimburse Southeast Health at a rate of at least what Southeast Health would have been paid under original Medicare.

52.     In providing these services, Southeast Health reasonably expected to be compensated for the services it provided to United at a value determined by what it would have received under original Medicare, as required by 42 U.S.C. § 1395w-22(a)(2) and 42 C.F.R § 422.100(b)(2).

53.     United retained the benefit of Southeast Health providing medical services to United's Medicare Advantage members without paying the full amount for said services. *See* **Exhibit C**. It would be unjust and inequitable for United to retain this benefit without United paying plaintiff the full reasonable value thereof.

54.     Therefore, Southeast Health is entitled to an equitable remedy requiring that United remit to Southeast Health the amount to be proven at trial, at least equal to the difference in the value between what Southeast Health was reimbursed and what it reasonably expected to be

10

reimbursed. Southeast Health is also entitled to prejudgment interest at the applicable rate, costs incurred in seeking to collect this debt, and any and all other relief to which the Court determines Southeast Health is entitled.

## COUNT IV
## UNJUST ENRICHMENT

55.     Southeast Health incorporates the preceding paragraphs as if fully set forth herein.

56.     Southeast Health benefited United by providing valuable medical services, including 340B drugs, to United's Medicare Advantage members during the relevant period.

57.     United knowingly accepted and retained these benefits provided to it by Southeast Health. *See* **Exhibit C**.

58.     Southeast Health reasonably expected it would be reimbursed by United for its valuable medical services in the same amounts it would have been reimbursed under original Medicare based on its relationship with United and as required by 42 U.S.C. § 1395w-22(a)(2) and 42 C.F.R § 422.100(b)(2).

59.     Consistent with the CMS Remedy Rule, United's unlawful retention of these benefits has damaged Southeast Health and violated its right to reimbursement for the reasonable value of the benefits provided to United. United's conduct and actions have resulted in its unjust enrichment at the expense of Southeast Health.

60.     Therefore, Southeast Health is entitled to an equitable remedy requiring that United remit to Southeast Health the amount to be proven at trial by which United has been unjustly enriched. Southeast Health is also entitled to prejudgment interest at the applicable rate, costs incurred in seeking to collect this debt, and any and all other relief to which the Court determines Southeast Health is entitled.

WHEREFORE, Plaintiff Southeast Health respectfully requests an order and judgment in its favor, and against Defendant UnitedHealthCare Insurance Company, Inc., awarding Plaintiff Southeast Health the following relief:

          A.      Compensatory damages in an amount to be determined at trial;

          B.      Pre-judgment and post-judgment interest;

          C.      The costs of this action; and

          D.      Any other or different relief to which it is entitled.

## JURY DEMAND

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS AND ISSUES ASSERTED IN ITS COMPLAINT AND/OR TRIABLE BY A JURY.**

### SIGNATURE BLOCK TO FOLLOW

 

        *s/ Mark B. Roberts*
        Catherine G. Kirkland      (KIR050)
        Mark B. Roberts          (ROB166)
        Garrett F. Lucey          (LUC034)

        *Attorneys for Plaintiff*

**OF COUNSEL:**
BURR & FORMAN LLP
RSA Tower
11 North Water Street
Suite 22200
Mobile, Alabama 36602
Telephone: (251) 344-5151
Facsimile: (251) 344-9696

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**

UnitedHealthCare Insurance Company
c/o C T Corporation System
2 North Jackson Street
Suite 605
Montgomery, Alabama  36104

ELECTRONICALLY FILED
9/13/2023 3:42 PM
38-CV-2025-900290.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

# Exhibit A

## RE: Pain management

Miller, Derek <rdmiller@southeasthealth.org>

| | |
|---|---|
| Archived: | 7/9/2022 1:51 PM |
| Sent: | 9/19/2018 1:26 PM |
| To: | Jones, Michael C <michael_c_jones@uhc.com>; Black, Curtis T <ctblack@samc.org>; Spurlock, Kathy M <kathy_spurlock@uhc.com>; Melvin, Michael R <michael_melvin@uhc.com> |
| Cc: | Downs, Sarah A <saraha_downs@uhc.com> |
| Folder: | rdmiller@southeasthealth.org/Exchange rdmiller/Sent Items |

image001.png

Michael,

Thanks for this decision, it was the right thing to do for the patients. We will communicate it to our scheduling/registration teams and physician offices. We will be careful to represent this as an interim payment policy only and not a change in network status.

Derek

**From:** Jones, Michael C <michael_c_jones@uhc.com>
**Sent:** Wednesday, September 19, 2018 1:21 PM
**To:** Black, Curtis T <ctblack@samc.org>; Spurlock, Kathy M <kathy_spurlock@uhc.com>; Melvin, Michael R <michael_melvin@uhc.com>
**Cc:** Miller, Derek <dmiller@samc.org>; Downs, Sarah A <saraha_downs@uhc.com>
**Subject:** RE: Pain management

I am sorry that this has taken a bit longer, and I am copying Michael Melvin from UnitedHealthcare on this; Michael is in our network management department.

I wanted to share some positive news with you, and I waited until after network management talked about this with Derek.

Effective immediately, although Southeast Alabama Medical Center is still not in our Medicare network, we have made some internal changes that will process all claims through 12/31/2018 as if the hospital was in network. We call this "nonpar pay as par". The reason for doing this is to minimize the frustration on your part, and on your patients/our members while they don't have an ability to change health plans.

What this means to you is that effective immediately, you will NOT have to get any gap exceptions for any of your members, and any claims from now through 12/31/2018 should process as they did before September 1. Any Medicare guidelines and prior authorization policies must still be met, but you should immediately notice an abrupt change in how your practice sees and is reimbursed for members.

We will NOT communicate this out widely in any way, as the status of Southeast Alabama Medical Center at this time is still an out of network hospital, and we don't want to cause mass confusion that the hospital is in network right now. Please communicate this to your staff internally, and if you have any issues with any claims denying saying that the hospital or the claims you file are out of network, let me know, and I will be glad to assist.

Again, the same requirements for notification or prior authorization still exist, but the burden of needing gap exceptions because of how you file claims is immediately lifted from now through 12/31/2018.

ELECTRONICALLY FILED
5/13/2025 3:42 PM
38-CV-2025-900290.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

# Exhibit B



Catherine Kirkland
ckirkland@burr.com
Direct Dial: (251) 340-7271

Burr & Forman LLP
RSA Tower
11 North Water Street
Suite 22200
Mobile, Alabama 36602

*Office* (251) 344-5151
*Fax* (251) 344-9696

BURR.COM

May 9, 2025

## VIA EMAIL AND U.S. CERTIFIED, FIRST-CLASS MAIL

United Healthcare Insurance Company
United Healthcare of Alabama, Inc.
33 Inverness Ctr. Pkwy., Ste 350
Birmingham, Alabama 35242

United Healthcare Insurance Company
United Healthcare of Alabama, Inc.
33 Inverness Ctr. Pkwy., Ste 350
Hoover, Alabama 35242

### Re:    Southeast Health – Demand for Payment of 340B Claims from 9/1/2018-12/2/2022

To Whom It May Concern:

Burr & Forman, LLP represents Southeast Health with respect to Southeast Health's 340B Medicare Advantage claims against United Healthcare of Alabama, Inc., United Healthcare Insurance Company, and their affiliates that underwrite or administer health plans (collectively "United"). As explained below, Southeast Health formally demands that United issue Southeast Health a payment in the amount of **$4,750,000, plus interest** by May 30, 2025, related to United's failure to pay Southeast Health the lawful Medicare rate of average sales price ("ASP") plus 6% for 340B drugs administered between September 1, 2018 and December 2, 2022.

### Relevant Background

Southeast Health has provided medical services, including outpatient services, to United's Medicare Advantage enrollees ("Enrollees") without a contract since September 1, 2018.

The present dispute centers solely on Southeast Health's reimbursement for drugs purchased through the federal 340B program. Congress created the 340B program to enable hospitals treating a high volume of low-income patients to purchase certain drugs from manufacturers at discounted prices. Southeast Health is a 340B hospital. Medicare reimburses hospitals for drugs provided to Medicare beneficiaries, including drugs purchased through the 340B program. For traditional Medicare, the Centers for Medicare and Medicaid Services ("CMS") administers and sets Medicare rates.

AL • DE • FL • GA • MS • NC • SC • TN

United Healthcare Insurance Company
May 9, 2025
Page 2

United is a Medicare Advantage organization ("MAO"). Prior to September 1, 2018, United and Southeast Health contracted for Southeast Health to provide healthcare services to United's Medicare Advantage members and for United to pay Southeast Health for those services according to the terms of the parties' agreement. For a variety of reasons, the parties ended their Medicare Advantage agreement at the end of August 2018 and the parties have been out-of-network or "non-contract" ever since. Southeast Health continued to treat United's Medicare Advantage beneficiaries and United paid Southeast Health as a non-contract provider. When an MAO is non-contract with a provider, CMS requires MAOs to "reimburse non-contracting providers at least the original Medicare rate for Medicare covered services." CMS, "MA Payment Guide for Out of Network Payments," 4/15/2015 Update.

CMS adopts a rule each year establishing the next year's Medicare payment rates. In each year prior to 2018, CMS established the Medicare rate for all drugs at ASP + 6%, which is the default rate set forth in the Medicare statute. But, effective January 1, 2018, CMS adopted a rule that materially reduced the Medicare rate for 340B drugs specifically. Because United was required to pay non-contract providers at least the original Medicare rate for Medicare-covered services, United implemented CMS' 340B rate reduction and passed it on to Southeast Health.

After the 340B rate reduction in 2018, numerous hospitals and associations sued CMS. After years of litigation, in June 2022, the United States Supreme Court declared CMS' rule unlawful and contrary to the Medicare statute in a unanimous decision. Shortly thereafter, on September 28, 2022, a lower federal court vacated CMS' unlawful rule with immediate effect.

On December 20, 2022, CMS released an informational bulletin for MAOs regarding the Supreme Court case and CMS' need to restore the Medicare statutory default rate for 340B drugs immediately. CMS noted "[a]s a reminder, MAOs must pay non-contract providers or facilities for services and items at least the amount they would have received under Original Medicare payment rules[.]" CMS, "Hospital Outpatient Prospective Payment System Update on Payment Rates for Drugs Acquired through the 340B Program – Informational for MAOs," December 20, 2022.

On January 10, 2023, the lower federal court ordered CMS to remedy its underpayments to 340B hospitals from January 1, 2018 to September 27, 2022. CMS ultimately adopted a rule on November 8, 2023 under which it remediated the Medicare underpayments caused by its unlawful 340B rate. Specifically, CMS paid one-time, lump sum remedy payments to impacted 340B hospitals to make them whole for the amount they should have been paid under the lawful 340B rate (*i.e.*, the Medicare statutory default rate) for 340B drugs from 2018 to 2022. In this rule, CMS again noted that "MAOs must pay non-contract providers or facilities for services and items at least the amount they would have received under Original Medicare payment rules[.]" 88 Fed. Reg. 77150, 77184 (Nov. 8, 2023).

United Healthcare Insurance Company
May 9, 2025
Page 3

---

As of today, CMS has made 340B hospitals whole for their 340B Medicare underpayments from 2018-2022. Southeast Health requests that United do the same.

### **Demand for Payment**

Southeast Health has preliminarily calculated its 340B underpayments from United for the time period of September 1, 2018 - December 2, 2022 to be at or around **$4,750,000, plus interest.** If United is interested in settling these claims prior to litigation, Southeast Health is prepared to produce to United a detailed spreadsheet documenting these claims and Southeast Health's underpayment calculation.

If we have not heard from United by **May 30, 2025**, Southeast Health is prepared to pursue all legal remedies, including initiating formal legal proceedings.

Sincerely,


Catherine Kirkland

ELECTRONICALLY FILED
5/13/2025 3:42 PM
38-CV-2025-900290.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

# Exhibit C



June 6, 2025

Burr & Forman LLP
c/o Catherine Kirkland
11 North Water Street, Suite 22000
Mobile, AL 36602

**Re: Southeast Health – Demand for Payment of 340B Claims from 9/1/2018 – 12/2/2022**

Dear Catherine,

Thank you for your May 9, 2025, letter inquiring about UnitedHealthcare's (United's) payments for 340B drugs to Southeast Health for claims submitted on September 1, 2018, through December 2, 2022.

United reviewed the November 2, 2023, CMS 340B Remedy Final Rule and considered its applicability to United's non-contracted facilities. CMS has not issued any specific direction to Medicare Advantage plans related to 340B payments or lump sum remedy payments to non-contracted providers for January 1, 2018, through September 27, 2022. As such, United will not make lump sum payments to non-contracted providers at this time. Non-contracted providers were able to submit claims for reprocessing for dates of service on or after Jan. 1, 2022, through Sept. 27, 2022, subject to timely filing requirements.

United reserves all rights, claims and legal defenses in connection with the same.

Please let me know if you have any additional questions regarding this issue.

Sincerely,

Adam Carroll
Associate General Counsel