IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HOUSTON COUNTY HEALTH CARE AUTHORITY d/b/a SOUTHEAST HEALTH, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | CASE NO. 1:25-cv-00524-RAH |
| | ) | |
| UNITEDHEALTHCARE INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) | |

## **MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

Pending before the Court is Defendant UnitedHealthcare Insurance Company's (United) *Motion to Compel Arbitration and Stay Further Proceedings*. (Doc. 36.) Plaintiff Houston County Health Care Authority (d/b/a Southeast Health) opposes the motion. After careful review, the motion is due to be granted.

### BACKGROUND

Southeast Health is a public not-for-profit hospital located in Dothan, Alabama. United is a healthcare insurance company that offers various types of healthcare plans, including Medicare Advantage[1] and commercial health insurance plans, to its enrollees.

---

[1] The Medicare Advantage program "is a public-private health insurance system that runs parallel to Medicare." *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1308 (11th Cir. 2020). It "allows Medicare beneficiaries to opt into private health insurance plans offered by Medicare Advantage Organizations (MAOs) that provide coverage in excess of the coverage provided by Medicare." *Id.*

On June 13, 2025, Southeast Health sued United in the Circuit Court of Houston County, Alabama for breach of implied contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, and unjust enrichment arising out of United's alleged failure to properly reimburse Southeast Health for certain prescription drugs provided by Southeast Health to United's Medicare Advantage enrollees through the federal 340B drug pricing program.[2] United timely removed the case to this Court on July 16, 2025.

The parties' relationship concerning the 340B drug pricing program dates back to 2007. In July 2007, Southeast Health and United entered into a Facility Participation Agreement (FPA) under which Southeast Health agreed to provide medical services to United's Medicare Advantage and commercial plan members as an "in network" provider in exchange for independently agreed-upon reimbursement rates. (Doc. 44 at 6.)

Pertinent to the parties' current disputes, the FPA includes a dispute resolution provision that states in relevant part:

> The parties will work together in good faith to resolve any and all disputes between them (hereinafter referred to as "Disputes") including but not limited to all questions of arbitrability, the existence, validity, scope or termination of the Agreement or any term thereof.

> If the parties are unable to resolve any such Dispute within 60 days following the date one party sent written notice of the Dispute to the other party, and if either party wishes to pursue the Dispute, it shall thereafter be submitted to binding arbitration before a panel of three arbitrators in accordance with the Commercial Dispute Procedures of the American Arbitration Association, as they may be amended from time to time (see http://www.adr.org).

---

[2] Section 340B of the Public Health Service Act, Pub. L. No. 102-585, § 602, 106 Stat. 4943, 4967 (1992) (codified at 42 U.S.C. § 256b), requires drug manufacturers to sell prescription drugs at discounted rates to certain hospitals serving low income or rural populations. 42 U.S.C. § 256b(a)(1); *see also Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 730 (2022).

(Doc. 36-1 at 13–14.) By its express terms, the dispute resolution provision "governs any dispute between the parties arising before or after execution of this Agreement, and shall survive any termination of this Agreement." (*Id.* at 14.)

The parties continued to operate by the full terms of the FPA until 2018. On February 26, 2018, Southeast Health notified United of its intent to terminate the FPA, effective August 31, 2018, so that it could renegotiate more favorable reimbursement terms. (Doc. 44-1 at 10.) Several months later but before the August 31, 2018, effective date of the termination, Southeast Health and United decided to amend the FPA and therefore executed an "Amendment to the Facility Participation Agreement." (*Id.* at 12.) Among other things, the 2018 Amendment (effective for a 3-year term) provided that Southeast Health would continue to be "in-network" for United's commercial and Medicare Select[3] plan enrollees but that United's Medicare Advantage Private Fee-For-Service Plan enrollees would not. (*Id.* at 14.) Importantly, the 2018 Agreement expressly provided that "[a]ll other provisions of the [FPA] shall remain in full force and effect." (*Id.* at 13.) Southeast Health and United entered into similar amendments in 2021 (effective for a 2-year term) and 2023 (effective for a 3-year term). (*Id.* at 45.)

The current lawsuit concerns a dispute between Southeast Health and United over the reimbursement rates for United's Medicare Advantage enrollees after Southeast Health became an out-of-network provider. United moves to compel arbitration of Southeast Health's claims under the dispute resolution provision (arbitration agreement) contained in the FPA.

## LEGAL STANDARD

A court's ruling on a motion to compel arbitration is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate," and the standard of review is analogous to a summary

---

[3] Medicare Select is a type of Medicare supplement. (Doc. 44 at 7.) It is separate and distinct from the Medicare Advantage program. (*Id.*)

judgment motion. *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (quoting *Magnolia Cap. Advisors, Inc. v. Bear Stearns & Co.*, 272 Fed. App'x 782, 785 (11th Cir. 2008)). If the court concludes that there "is no genuine dispute as to any material fact concerning the formation of such an agreement," it "may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (quoting *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016)). "If, on the other hand, the making of the agreement is in issue, 'the court shall proceed summarily to the trial thereof.'" *Id.* (quoting 9 U.S.C. § 4).

## DISCUSSION

Arbitration agreements are governed by the Federal Arbitration Act (FAA). 9 U.S.C. § 1, *et seq*. "The FAA [ ] places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citation omitted). When evaluating a motion to compel arbitration, courts must first determine whether an enforceable agreement to arbitrate exists. *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). If an agreement exists, the court must then analyze whether the parties committed a dispute to arbitration. *Id.* If the dispute falls within the scope of a valid arbitration agreement, courts must compel arbitration and either stay or dismiss the action. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court . . . ."); *John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute." (citation omitted)); 9 U.S.C. § 3.

The existence and scope of an arbitration agreement is a matter of state contract law. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("Thus, in determining whether a binding agreement arose between the

4

parties, courts apply the contract law of the particular state that governs the formation of contracts."). Additionally, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

As Southeast Health puts it, United's arbitration motion "is premised on incorrect facts because the 2007 Agreement was terminated and never revived for Medicare Advantage," and the "parties never agreed to arbitrate the claims at issue in this lawsuit" because "United's argument is based on an unrelated and terminated agreement" that "is contrary to the intent of the parties." (Doc. 44 at 16, 17.) Thus, the crux of the parties' arbitration-related dispute is whether the FPA, including the arbitration agreement, was terminated in 2018 as Southeast Health claims, and if not terminated, whether Southeast Health's claims against United fall within the scope of the arbitration agreement even though Southeast Health's claims are based in no part on the FPA.

Southeast Health's termination argument is based on the enforceability of the FPA as a whole.[4] United claims this is a gateway issue that is subject to the delegation provision in the arbitration agreement because the parties expressly agreed to submit to the arbitrator "all questions of arbitrability, the existence, validity, scope or termination of the Agreement or any term thereof." Similarly, United argues that Southeast Health's applicability argument is a dispute over scope which also is a gateway issue subject to the delegation provision.

Arbitration is a matter of contract law; as such, the Supreme Court of the United States and the Eleventh Circuit have recognized that "parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope,

---

[4] In particular, Southeast Health does not claim or present any evidence that the 2018 termination letter specifically mentioned the arbitration agreement.

applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (citing *Rent-A-Ctr., W., Inc*, 561 U.S. at 68-69). An agreement to arbitrate these gateway issues—often called a delegation provision or *First Options* clause—"is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id*. at 1264 (quoting *Rent-A-Ctr., W., Inc*, 561 U.S at 70). Thus, "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *Id*. (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). If the parties agree to delegate issues of arbitrability to an arbitrator, "a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

Questions of arbitrability include "whether the agreement covers a particular controversy," and "whether [the] claims are within the scope of the arbitration agreement." *In re Checking Acct. Overdraft Litig.*, 674 F.3d at 1252 (holding that whether a particular dispute or controversy is subject to arbitration is a question of arbitrability that the parties delegated to an arbitrator); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1299–1302 (11th Cir. 2022) (holding that the scope of the arbitration agreement was an issue of arbitrability the parties agreed to delegate to an arbitrator); *Jones*, 866 F.3d at 1270–71 (holding that when parties agree to delegate all gateway issues, any questions about the scope of the arbitration agreement must be left to the arbitrator).

Arbitrability also includes disputes concerning the enforceability of an arbitration agreement based on an alleged terminated or void agreement or contract. *See Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014) (holding that dispute over contract termination was a question of arbitrability delegated to the arbitrator); *see also Managed Health Care Admin., Inc. v. Blue Cross & Blue Shield*

6

*of Ala.*, 249 So. 3d 486, 491–92 (Ala. 2017) (holding that dispute over contract termination was an arbitrability issue subject to delegation clause); *Ex parte Shamrock Food Service, Inc.*, 514 So. 2d 921, 922 (Ala. 1987) ("Clearly, under the broad provisions of the arbitration clause, the issue of whether the contract has been terminated must be submitted to arbitration.").

When "an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision." *Jones*, 866 F.3d at 1264 (quoting *Parnell v. CashCall, Inc*., 804 F.3d 1142, 1144 (11th Cir. 2015)). "Only if [a court] determine[s] that the delegation clause is itself invalid or unenforceable may [a court] review the enforceability of the arbitration agreement as a whole." *Id*. (quoting *Parm v. Nat'l Bank of Cal., N.A*., 835 F.3d 1331, 1335 (11th Cir. 2016)). Thus, a court can examine a challenge to a delegation provision only if the claimant "challenge[s] the delegation provision directly." *Id*. (quoting *Parnell*, 804 F.3d at 1144.). Such a challenge generally comes in the form of a claim of fraud, duress, unconscionability, or another generally applicable contract defense. *Rent-A-Ctr., W., Inc*, 561 U.S. at 72. When a delegation provision is not challenged, a court must treat the delegation provision as valid. *Id.*

By the plain language of the FPA and incorporation of the rules of the American Arbitration Association (AAA), Southeast Health and United agreed to delegate *all* questions of arbitrability to the arbitrator. As it concerns the FPA, the parties expressly agreed to submit to the arbitrator "all questions of arbitrability, the existence, validity, scope or termination of the Agreement or any term thereof." (Doc 36-1 at 13.) And further, under the arbitration agreement in the FPA, the parties agreed that all disputes "shall be submitted to binding arbitration . . . in accordance with the Commercial Dispute Resolution Procedures of the American Arbitration Association," and those rules provide that the arbitrator has the power to rule on his or her own jurisdiction; meaning the arbitrator rules on arbitrability. (*Id.* at 14.) Such

agreements constitute evidence of the parties' intent to delegate questions of arbitrability to the arbitrator. *See Attix*, 35 F.4th at 1298 ("[I]ncorporating the AAA's jurisdictional rules into an agreement constitutes clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability even if no other delegation language appears elsewhere in the contract."); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (holding that incorporation of AAA rules in arbitration agreement evidences clear and unmistakable intent to delegate issues of arbitrability); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."); *Managed Health Care Admin., Inc.*, 249 So. 3d at 491–92 (holding that dispute over contract termination was an arbitrability issue subject to delegation clause).

Southeast Health does not challenge the delegation provision itself. Instead, Southeast Health challenges the arbitration agreement in general by challenging the enforceability of the FPA in general and by challenging the applicability of the arbitration agreement to a dispute that does not concern the contract (the FPA) in which the arbitration agreement is embedded. These clearly are issues of arbitrability and therefore are issues that the parties delegated to an arbitrator for resolution since they concern "the existence, validity, scope or termination of the Agreement or any term thereof." (Doc. 36-1 at 13.) In sum, the delegation provision governs and requires that Southeast Health's arguments in opposition to enforcement of the arbitration agreement be submitted to arbitration.

## CONCLUSION

Southeast Health's opposition to United's arbitration motion raises issues of arbitrability that must be submitted to the arbitrator for resolution. Since these are arbitrable disputes, § 3 of the FAA compels the Court to stay these proceeding. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Thus, all of Southeast Health's claims against

United will be stayed pending conclusion of the arbitration proceeding. The Court expresses no opinion on the merits of Southeast Health's claims or on the underlying arbitrability of its claims. *See Attix*, 35 F.4th at 1309 (addressing only who decides "whether the parties must arbitrate").

    Accordingly, it is **ORDERED** as follows:

(1)    Defendant's *Motion to Compel Arbitration and Stay Further Proceedings* (doc. 36) is **GRANTED**;

(2)    The parties are compelled to arbitration pursuant to the arbitration agreement contained in the Facility Participation Agreement;

(3)    This case is **STAYED** pending conclusion of the arbitration; and

(4)    On or by **March 2, 2026**, the parties shall file a status report concerning the arbitration, and shall file updated reports every 90 days thereafter.

**DONE** and **ORDERED** on this the 17th day of December 2025.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE